# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **B.M. and A.M.**

**No. 17-0114** (Kanawha County 16-JA-119 & 16-JA-120)

**FILED**

**June 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.M., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's January 9, 2017, order terminating his parental rights to B.M. and A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) admitting the testimony of the counselor who interviewed child C.J.; (2) failing to weigh the evidence of sexual abuse against the other evidence in the case; and (3) denying him post-termination visitation with the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2016, the DHHR filed an abuse and neglect petition that alleged petitioner sexually abused C.J., his thirteen-year-old stepdaughter. The DHHR alleged that the abuse occurred in the home and that the other children in the home were also abused and neglected.[2] According to C.J.'s disclosure, on one occasion she was lying in bed with petitioner, her mother, and child B.M., when petitioner penetrated her vagina with his finger and forced her to touch his

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, the proceedings in circuit court concerned additional children, J.J. and C.J., that are not petitioner's biological children and, thus, are not at issue on appeal.

[2]At the time, four children lived in the home: petitioner's two biological children, B.M. and A.M., and his two stepchildren, C.J. and J.J.

1

genitals. On another occasion, petitioner attempted to insert his penis into her rectum. C.J. also indicated that petitioner touched her breasts on multiple occasions and tried to perform oral sex on her. According to C.J., this abuse happened at least twice when the family resided at another location and several incidents occurred in the home she lived in at the time of the disclosure. C.J. also indicated that she previously disclosed this abuse to a pastor and a friend. Finally, C.J. alleged that petitioner viewed pornography in the home. Petitioner thereafter waived his right to a preliminary hearing. The children's guardian also moved for C.J. to receive therapy.

In June of 2016, the circuit court held an adjudicatory hearing, during which the circuit court heard testimony from Maureen Runyon from the Child Advocacy Center at Women's and Children's Hospital in Charleston, West Virginia. Ms. Runyon previously interviewed C.J. and was qualified as an expert forensic interviewer. Petitioner objected to Ms. Runyon's testimony, but the circuit court overruled the objection. Ms. Runyon then testified to C.J.'s disclosures regarding a number of times that petitioner fondled her vagina and digitally penetrated her, in addition to forcing the child to touch his penis. The child also discussed petitioner's repeated fondling of her breasts and an attempt to perform oral sex on her. Ms. Runyon testified to the child's specificity in her disclosures, as evidenced by her ability to recall the time period during which this abuse occurred. Ms. Runyon also testified to the child's disclosures to other individuals.

Thereafter, petitioner called his mother to testify. According to petitioner's mother, she was familiar with the signs of sexual abuse given that she raised children who suffered such abuse. Petitioner's mother testified that she did not see any inappropriate acts between petitioner and C.J., although she did admit that she does not spend the night at petitioner's home, which is when several instances of the abuse were alleged to have occurred. Petitioner also testified and denied any sexual abuse. According to petitioner, C.J. would often ask him to lie in bed with her so they could talk about her day. Petitioner further testified to "weird things" C.J. would do, like lick his neck. He also admitted to viewing pornography on his phone, away from the children, although he denied having deleted his phone's memory in an effort to obscure evidence from the police. According to petitioner, he deleted the phone's contents because it wasn't working properly. The child's mother also testified and stated that C.J. was "flirty" with adult men, including petitioner. The mother also testified that she did not believe C.J.'s allegations and chose to remain in a relationship with petitioner. Ultimately, the circuit court found that petitioner "sexually molested" C.J. based on the child's "credible, consistent disclosures of multiple sexual acts, including digital penetration, taking inappropriate photos of her, making her touch his penis, fondling her breasts, and attempting to anally penetrate her." The circuit court additionally found that C.J.'s disclosures concerned "sex abuse [that] occurred over two different residences and covered a significant portion of time." The circuit court further denied petitioner visitation with the children.

In July of 2016, the circuit court held a dispositional hearing, during which a Child Protective Services ("CPS") worker testified that there were no services that could correct the conditions of sexual abuse in the home, especially given petitioner's failure to acknowledge any wrongdoing. Ultimately, the circuit court terminated petitioner's parental rights to his children,

B.M. and A.M., and denied him post-termination visitation with the children.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

To begin, we find no error in the circuit court's admission of the testimony of Maureen Runyon. We have previously held that

> "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 1, *State v. Payne*, 225 W.Va. 602, 694 S.E.2d 935 (2010). Moreover, "'[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." *Id.* at 604, 694 S.E.2d at 937, Syl. Pt. 2. It is well settled that "'[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W. Va. 639, 301 S.E.2d 596, 599 (1983)." Syl. Pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983).

---

[3]According to the parties, the parental rights of all parents to children B.M. and A.W. were terminated below. The parties further state that the children are placed in the home of their maternal grandparents with a goal of adoption in that home. The guardian additionally states that J.J.'s father plans to relinquish his parental rights to that child, while the DHHR is proceeding against C.J.'s father in the abuse and neglect proceedings below. According to the parties, the mother of J.J. and C.J. had her parental rights terminated below.

On appeal, petitioner argues that Ms. Runyon's testimony contained inadmissible hearsay in the form of C.J.'s statements regarding petitioner's sexual abuse. According to petitioner, this testimony was inadmissible due to the fact that the child's statements were made to Ms. Runyon for purposes of proceeding against him in the abuse and neglect matter, not for purposes of medical treatment. We do not agree. We have long held that

> "[t]he two-part test set for admitting hearsay statements pursuant to W.Va.R.Evid. 803(4) is (1) the declarant's motive in making the statements must be consistent with the purposes of promoting treatment, and (2) the content of the statement must be such as is reasonably relied upon by a physician in treatment or diagnosis." Syl. Pt. 5, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

*Payne*, 225 W.Va. at 604, 694 S.E.2d at 937, Syl. Pt. 4. We have also held that

> "[w]hen a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive in making the statement is consistent with the purposes of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony is inadmissible if the evidence was gathered strictly for investigative or forensic purposes." Syl. Pt. 9, *State v. Pettrey*, 209 W.Va. 449, 549 S.E.2d 323 (2001), *cert denied*, 534 U.S. 1142, 122 S.Ct. 1096, 151 L.Ed.2d 994 (2002).

*Payne*, 225 W.Va. at 604, 694 S.E.2d at 937, Syl. Pt. 5. Further,

> [w]hen a child sexual abuse or assault victim is examined by a forensic nurse trained in sexual assault examination, the nurse's testimony regarding statements made by the child during the examination is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, *West Virginia Rule of Evidence* 803(4), if the declarant's motive for making the statement was consistent with the purposes of promoting treatment and the content of the statement was reasonably relied upon by the nurse for treatment. In determining whether the statement was made for purposes of promoting treatment, such testimony is admissible if the evidence was gathered for a dual medical and forensic purpose, but it is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

*Payne*, 225 W.Va. at 604, 694 S.E.2d at 937, Syl. Pt. 6.

Upon our review, we find that the child's statements from Ms. Runyon's testimony were admissible pursuant to Rule 803(4) of the West Virginia Rules of Evidence. The record shows that C.J. was referred to the Child Advocacy Center at Women's and Children's Hospital for

4

examination because of her disclosures of sexual abuse, thereby establishing that the child's motive for making the statement was consistent with the purpose of promoting treatment. Simply put, there is nothing in the record to indicate that the child made statements to Ms. Runyon for any purposes other than treatment, and petitioner cannot establish that this was the case. On appeal, petitioner simply alleges, with no evidence in support, that the child was not taken to Ms. Runyon for purposes of treatment but, rather, "so a statement could be taken and used in court and overcome the objection to hearsay." This assertion is contradictory to the evidence presented below.

The record is clear that Ms. Runyon gathered the statements in question for the purpose of promoting medical treatment for the child. Although Ms. Runyon was not a nurse and did not engage in play therapy, she was a forensic counselor trained in the process of interviewing victims of sexual abuse for purposes of treatment. According to Ms. Runyon's testimony, her forensic interview of the child was the first step in a two-step process, whereby she collected information regarding possible abuse so that a medical professional could thereafter conduct an examination based on the child's disclosures. Additionally, the circuit court in this matter specifically ordered at adjudication that the child "shall remain in therapy[,]" thereby confirming that the ultimate goal of the child's interview was continued treatment for the effects of her abuse. Such treatment necessarily required that the medical professionals treating the child understand the full extent of her injuries, both physical and psychological. As such, we find no abuse of discretion in the circuit court's admission of the testimony in question, as the same qualified as an exception to the hearsay rule under Rule 803(4).

Next, the Court finds no error in the circuit court's credibility determinations below. According to petitioner, the circuit court erred in failing to weigh the evidence of C.J.'s allegations of sexual abuse against the other evidence in the case. Specifically, he argues that he provided substantial evidence that established that C.J.'s allegations were fabricated, including his assertion that the child's actions were inconsistent with someone who feared him. As such, petitioner argues that the circuit court's findings regarding the credibility of the child's allegations were in error.[4] We do not agree. While petitioner argues that the circuit court

---

[4]In support of this assignment of error, petitioner relies on the following:

Where a trial court order terminating parental rights merely declares that there is no reasonable likelihood that a parent can eliminate the conditions of neglect, without explicitly stating factual findings in the order or on the record supporting such conclusion, and fails to state statutory findings required by West Virginia Code § 49-6-5(a)(6) (1998) (Repl.Vol.2001) [now W.Va. Code § 49-4-604(b)(6)] on the record or in the order, the order is inadequate. Likewise, where a trial court removes a child from the custody of an allegedly neglectful parent and places exclusive custody in another individual, the court must adhere to the mandates of West Virginia Code § 49-6-5(a)(5) [now W.Va. Code § 49-4-604(b)(5)], and failure to include statutorily required findings in the order or on the record renders the order inadequate.

(continued . . . )

impermissibly granted more credibility to Ms. Runyon's testimony and the child's statements, he can cite to no evidence that the circuit court improperly weighed the testimony below. The crux of petitioner's argument is simply that he disagrees with the fact that the circuit court ultimately ruled against him in regard to the issue of his sexual abuse of C.J. However, this argument ignores the record on appeal, which includes the circuit court's clear reasoning for making its determinations.

The record shows that the circuit court carefully considered the specifics of Ms. Runyon's interview with C.J., including the fact that the interview was not leading and presented the child with "a broad question to allow the child to answer it in any way that the child wanted to." Moreover, the circuit court relied on the child's consistency and level of detail in reaching its conclusion that her disclosures were credible. This included the fact that the child recalled specific details of petitioner's abuse across an extended time period and multiple homes. Petitioner, on the other hand, simply denied that the abuse occurred and indicated that the child did not act in a way that he believed an abused child would behave. Additionally, the mother testified regarding her disbelief of the allegations against petitioner, but the circuit court found her testimony to be "self-serving" and that it lacked credibility. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Accordingly, the circuit court was tasked with making factual determinations in this matter, and, consistent with our case law, we decline to disturb those factual determinations on appeal. Therefore, we find no error in the circuit court's evidentiary rulings below.

Next, the Court finds no error in the circuit court's denial of petitioner's request for post-termination visitation. On appeal, petitioner argues that because he was adjudicated of sexually abusing a stepchild and not his biological children, it was error to deny him post-termination visitation with the subject children. Petitioner also argues that he never abused his own children. He further argues that the children should be allowed to visit with him if they wish. Upon our review, the Court finds this assignment of error to be without merit. We have previously held that

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being

Syl. Pt. 4, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001). Petitioner's reliance on this holding is misplaced. The issue on appeal concerns neither a finding that there was no reasonable likelihood he could eliminate the conditions of neglect, nor a ruling removing the children from his custody. As such, this case is not controlling on this issue.

6

and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Petitioner has provided no evidence that continued visitation with his children would be in their best interests. Conversely, the circuit court found that he sexually abused C.J. while the other children lived in the home, thereby subjecting the other children to abuse. As we have held,

> [w]here there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), . . . another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under [West Virginia Code § 49-2-201].

Syl. Pt. 2, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995). Accordingly, we find no error in the circuit court's denial of post-termination visitation with petitioner.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 9, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 19, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker