694 S.E.2d 935

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Kevin B. PAYNE, Defendant Below, Appellant.**

No. 34889.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 2010.

Decided May 6, 2010.

Circuit Court of Morgan County. Following a two-day jury trial, the Appellant was convicted of two counts of Second Degree Sexual Assault (Counts I and III); one count of First Degree Sexual Abuse (Count II); and, one count of Third Degree Sexual Abuse (Count IV). The trial court sentenced the Appellant to consecutive sentences of ten to twenty-five years on Count I; one to five years on Count II; ten to twenty-five years on Count III; and ninety days on Count IV. The Appellant contends that the trial court erred by (1) admitting the testimony of a forensic nurse; (2) admitting the Appellant's own statement to police officers; (3) failing to direct a verdict for the Appellant; (4) committing cumulative error; and (5) imposing a sentence disproportionate to the crimes.[1]

## I. Factual and Procedural History

The Appellant and his girlfriend, Tamela Younker, lived with Ms. Younker's twelve-year-old daughter, T.F.[2] and several male siblings in a Berkeley County home. According to evidence submitted at trial, the Appellant, Ms. Younker, and T.F. were playing cards in their home on February 26, 2006, and were allegedly drinking alcohol. Disputed evidence was presented on the issue of whether the child victim had been allowed to consume alcohol on that evening.[3]

The testimony indicated that the victim went to sleep on the couch later that night. She awakened to discover that her shorts had been pulled down, and the Appellant's mouth was on her vaginal area. She kicked the Appellant, apparently convincing him to

B. Craig Manford, Martinsburg, WV, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Robert D. Goldberg, Assistant Attorney General, Charleston, WV, for Appellee.

McHUGH, Justice:

This is an appeal by Kevin Payne (hereinafter "Appellant") from a conviction in the

---

**1.** The four counts upon which the Appellant was convicted included the following:

 1. Sexual Assault in 2nd degree, pursuant to W.Va.Code § 61–8B–4, based upon a February 26, 2006, incident during which the Appellant placed his mouth on the victim's vagina.

 2. Sexual Abuse in 1st degree, pursuant to W.Va.Code § 61–8B–7, based upon the Appellant touching the victim's vagina and breast between April 2004 and April 2005.

 3. Sexual Assault in 2nd degree, pursuant to W.Va.Code § 61–8B–4, based upon an incident during which the Appellant placed his mouth on the victim's vagina between April 2004 and April 2005.

 4. Sexual Abuse in 3rd degree, pursuant to W.Va.Code § 61–8B–9, based upon a February 26, 2006, incident.

**2.** The victim was twelve years of age at the time of the February 2006 incident. Consistent with our past practice in juvenile and domestic relations cases which involve sensitive facts, we use initials in place of the last names of the parties. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

**3.** Ms. Younker testified that she drank two Kahluas, and she claimed that she had prepared a non-alcoholic Kahlua and cream for the victim. The Appellant consumed beer, Kahlua, and Jagermeister. The victim stated that she had been given a glass of Kahlua and a shot of alcohol. She further stated that the Appellant had continued to offer her alcohol, but she declined.

return to his own bedroom. The Appellant later returned to the victim and attempted to pull her pants down again. The victim kicked the Appellant again and began to cry. Although the Appellant attempted to calm her, she yelled for her mother. When Ms. Younker awakened, she and the victim went in the bathroom and shut the door. During the ensuing conversation, the victim informed her mother of the Appellant's actions. Later that afternoon, when the Appellant had left the house, the victim again discussed the incident with her mother.

Ms. Younker subsequently took the victim to the Berkeley County Sheriff's Office and was advised by Deputy Sheriff Tony Link to take the victim to a Winchester, Virginia, hospital for medical treatment and examination. A Family Protection Order [4] was also obtained from the Family Court, and a deputy removed the Appellant from the family home. While exiting the home, the Appellant told the deputy that he should ask the victim's mother about what she allowed the victim to drink on the night in question.

On February 28, 2006, the victim underwent an examination and interview by forensic nurse, Cynthia Leahy, trained as an R.N. and a forensic nurse examiner, at Winchester Medical Center. Nurse Leahy obtained the victim's full medical history to determine if she was at risk for pregnancy, sexually transmitted diseases, or other injuries requiring medical treatment. In procuring information relevant to her inquiry, Nurse Leahy obtained details about the underlying incident. Based upon the absence of pain or bleeding, as well as the absence of penile contact or ejaculation, Nurse Leahy concluded that the victim was at minimal risk for sexually transmitted diseases or traumatic injury.

On March 1, 2006, Deputy Link interviewed the victim at the Children's Advocacy Center in Martinsburg, West Virginia. Her description of the incident to Deputy Link was consistent with the information she had provided to her mother and Nurse Leahy. Furthermore, the victim informed Deputy Link that the Appellant had begun touching her inappropriately soon after her eleventh birthday. The victim described that the Appellant had used his hands and mouth to touch her vagina and breasts. The victim specified one incident which had occurred after a pool party in the summer of 2005. She had been permitted to drink beer at that party, and she indicated that the Appellant had sexually assaulted her when they returned from the party as she attempted to sleep in her room. She had chosen not to tell her mother about that incident, fearing that her mother would not believe her.

At trial, the defense claimed that T.F.'s allegations of sexual abuse were fabricated and that she simply wanted to move away from her mother's home to what was portrayed to be the less restrictive environment of her father's home. In examining the issue of admissibility of testimony from Nurse Leahy, the trial court ruled that the examination included a large medical component and was therefore admissible under West Virginia Rule of Evidence 803(4). The Appellant was found guilty on January 25, 2008. He now appeals that conviction.

## II. Standard of Review

This Court has consistently held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994). Syllabus point four of *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998), also instructs: "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are

---

4. In the application for the protection, Ms. Younker indicated that she suspected that sexual abuse by the Appellant had previously occurred. She testified that she had walked into T.F.'s room to find the Appellant on the bed with T.F. One of T.F.'s legs was on the Appellant's leg, and one leg was wrapped around the Appellant's back. T.F. later testified that the Appellant did not assault her on that occasion. Ms. Younker dropped the Family Protection Plan on March 16, 2006, and permitted the Appellant to move back into the home with her, their two sons, and another son of Ms. Younker from a prior relationship. The victim moved to the home of her biological father.

subject to review under an abuse of discretion standard." Likewise, in syllabus point two of *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983), this Court stated: " 'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596, 599 (1983)." Subject to these standards, we evaluate the Appellant's assignments of error.

### III. Discussion

### A. Admissibility of Testimony of Forensic Nurse

■ The Appellant contends that the trial court erroneously admitted hearsay testimony from forensic nurse Cynthia Leahy under the medical testimony exception to the hearsay rule.[5] The Appellant maintains that Nurse Leahy was not a medical provider and that the victim was referred to Nurse Leahy by Deputy Link solely for forensic purposes. The State, however, maintains that the evaluation had a pronounced medical component and is admissible under what has been described as a "dual purpose," comprising both medical and forensic purposes.

■ In *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990), this Court addressed the admissibility of statements made by children during treatment with a psychologist and found that such statements were admissible under certain circumstances. In syllabus point five, this Court articulated the two-part test for admitting hearsay statements pursuant to West Virginia Rule of Evidence 803(4), as follows:

> The two-part test set for admitting hearsay statements pursuant to W.Va.R.Evid. 803(4) is (1) the declarant's motive in making the statements must be consistent with the purposes of promoting treatment, and (2) the content of the statement must be such as is reasonably relied upon by a physician in treatment or diagnosis.

Consistent with that framework, this Court in *Edward Charles L.* found that the statements made by the victims of child sexual abuse to a treating psychologist did have a motive consistent with promoting treatment because the mother had presented the children to the psychologist for the purpose of treatment even before a criminal action was contemplated. Further, the statements were such that they would have been reasonably relied upon by the psychologist in diagnosis and treatment.

■ In *State v. Pettrey,* 209 W.Va. 449, 549 S.E.2d 323 (2001), this Court examined Rule 803(4) in the context of testimony from a play therapist regarding allegations of sexual abuse disclosed during play therapy. Utilizing the reasoning of *Edward Charles L.,* this Court addressed the issue of play therapy and held as follows in syllabus point nine of *Pettrey:*

> When a social worker, counselor, or psychologist is trained in play therapy and thereafter treats a child abuse victim with play therapy, the therapist's testimony is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive in making the statement is consistent with the purposes of promoting treatment and the content of the statement is reasonably relied upon by the therapist for treatment. The testimony is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

The *Pettrey* Court concluded that the statements at issue in that case, made by a child abuse victim during play therapy treatment, were admissible under Rule 803(4). 209 W.Va. at 460, 549 S.E.2d at 334.

This Court also addressed the application of Rule 803(4) in *Misty D.G. v. Rodney L.F.,* 221 W.Va. 144, 650 S.E.2d 243 (2007). This Court explained that the evaluation of whether a child's statement to a therapist or coun-

---

5. W. Va. R. Evid. 803(4) provides, in pertinent part, as follows: Rule 803(4) provides: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness.... (4) statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

selor is admissible requires an examination of the child's motive in originally making the statement, rather than the use ultimately made of the child's statement. 221 W.Va. at 150–51, 650 S.E.2d at 249–50. The *Misty D.G.* Court found that a child's statement to a sexual abuse counselor regarding alleged sexual abuse was admissible in child custody modification proceedings under the medical diagnosis or treatment exception to the hearsay rule. Although the counselor initially evaluated the case in a forensic manner, this investigation was accomplished with the intent of gathering information necessary for evaluation and subsequent treatment over the course of numerous counseling sessions. Thus, the information was not gathered *strictly* for investigative or forensic purposes and was therefore deemed admissible.[6]

Other jurisdictions encountering the question of admissibility of forensic nurse testimony in child sexual abuse cases have also focused upon the purpose for which the information was gathered. In *State v. Anderson*, 86 Conn.App. 854, 864 A.2d 35 (2005), *cert. denied*, 273 Conn. 924, 871 A.2d 1031, the Connecticut appellate court held that testimony from a certified nurse practitioner regarding information provided by a victim of sexual assault was admissible under the medical exception to the hearsay rule. 864 A.2d at 51. The defendant in that case had argued that because the victim went to the nurse practitioner at the suggestion of the police, rather than simply for medical care, the medical exception to the hearsay rule was not applicable. *Id.* at 47. The court disagreed, explaining that "[t]he key on which the issue of admissibility of the victim's statements turns is the purpose of the examination" and that the victim had believed she was seeing the nurse to be examined for injuries she may have sustained. *Id.* at 50. Thus, the court found that the testimony was admissible because the purpose of the exami-

nation was not investigatory but, rather, was for medical treatment. *Id.* at 51.

Building upon that rationale, the Connecticut appellate court again addressed the issue in *State v. Martin M.*, 115 Conn.App. 166, 971 A.2d 828 (2009). In that case, the defendant, having been charged with sexually abusing a minor victim, maintained that the forensic nurse practitioner was not in the "chain of medical treatment" and that the victim had been referred to the nurse by the police. 971 A.2d at 835. The victim had waited nine months to visit the nurse, and the police had referred the victim to this nurse. The court found that "the victim here believed [the nurse's] examination was for medical purposes. Accordingly, the court properly admitted [the nurse's] testimony of the victim's statements under the medical exception to the hearsay rule." *Id.*

Similarly, in *State v. Williams*, 137 Wash. App. 736, 154 P.3d 322 (2007), the Washington Appellate Court found that testimony regarding a victim's statements to a forensic nurse was admissible due to the fact that the statements were obtained for a "combination" of purposes, both medical and forensic. 154 P.3d at 328. Referencing guiding precepts very similar to those utilized by this Court in *Edward Charles L.* and *Pettrey*, the *Williams* court stated as follows:

> A party demonstrates a statement to be reasonably pertinent when (1) the declarant's motive in making the statement is to promote treatment, and (2) the medical professional reasonably relied on the statement for purposes of treatment. *State v. Butler*, 53 Wash.App. 214, 220, 766 P.2d 505 (1989).

*Id.* The court in *Williams* explained that the forensic nurse indicated as follows:

> [T]he purpose of the questionnaire was two-fold: to gather evidence and to identify treatable describe. [The nurse] examined [the victim] based on the history she

---

**6.** Professor Cleckley also commented on the scope of Rule 803(4) in his treatise on the rules of evidence as follows:

> Statements, to qualify under the rule, need not be made specifically to a physician. The statement may be directed to such personnel as nurses, technicians, or even family members as long as the purpose of the statement is for

diagnosis or treatment. It is the motive to promote diagnosis and treatment, and not the fact as to whom the statements were made, that gives such statements their indicia of trustworthiness.

Franklin D. Cleckley, Vol. 2, Handbook on Evidence for West Virginia Lawyers, § 8–3(B)(4), at 8–129 (2000).

obtained and, after the examination, provided [the victim] with information on sexually transmitted diseases and the risk of pregnancy. She also used the questionnaire to determine what kind of follow-up referrals were necessary or helpful.

*Id.*

Interestingly, the factual scenarios in two cases from Maryland demonstrate the differences between circumstances warranting admission of forensic nurse testimony and those warranting exclusion. In *Webster v. State,* 151 Md.App. 527, 827 A.2d 910 (2003), the court permitted the testimony of a sexual assault nurse regarding the child victim's statements to her. The court, based upon reasoning very similar to that described above, found that the victim perceived the visit to be of a medical nature. Additionally, the actual examination was for the dual purpose of both medical and forensic evaluation. The court opined that "[t]he rationale for admitting this type of hearsay—that statements in contemplation of medical diagnosis or treatment are inherently reliable—may still exist in such circumstances." 827 A.2d at 920. The court explained that "[i]f the challenged statement has some value in diagnosis or treatment, the patient would still have the requisite motive for providing the type of 'sincere and reliable' information that is important to that diagnosis and treatment." *Id.* (citation omitted). In permitting the challenged testimony, the court stated that "[t]his rationale applies in the context of this case, when a hospital nurse trained in both emergency care and sexual assault forensic examination treats and forensically examines a child immediately following a sexual assault, and in doing so solicits a description of the incident." *Id.*

Four years later, in *Coates v. State,* 175 Md.App. 588, 930 A.2d 1140 (2007), the Court of Special Appeals of Maryland encountered a situation in which the timing of the examination was extremely remote, the victim having been examined fourteen months after the alleged sexual abuse. Thus, the court found testimony of the pediatric nurse practitioner to be inadmissible since it could not be considered an examination for a medical purpose due to the remoteness in time. 930 A.2d at

1163. A similar result was reached in *State v. Ortega,* 143 N.M. 261, 175 P.3d 929 (N.M.App.2007) *cert denied,* 143 N.M. 213, 175 P.3d 307, wherein testimony of a sexual assault nurse examiner was held inadmissible where the examination was conducted after the alleged victim had already participated in formal legal proceedings and the medical needs of the alleged victim were not a primary object of the examination. 175 P.3d at 933.

Thus, where evidence exists to support a finding that a statement by a sexual assault victim to a forensic nurse was obtained for dual medical and forensic purposes, the testimony has consistently been ruled admissible. *See also North Carolina v. Isenberg,* 148 N.C.App. 29, 557 S.E.2d 568, 574–75 (2001), *cert. denied,* 355 N.C. 288, 561 S.E.2d 268 (2002) (finding no error in admitting statements made to hospital nurse and physician who had dual medical and forensic purposes for examination and interview); *State v. Janda,* 397 N.W.2d 59, 63 (N.D.1986) (finding no error in admitting statement made to hospital nurse on duty when victim arrived for examination because "the purpose of an examination of the kind involved here is not just the preservation of evidence, but diagnosis and treatment as well"); *Torres v. Texas,* 807 S.W.2d 884, 886–87 (Tex.Ct.App.1991) (finding no error in admitting statements made to emergency room nurse who "engaged in a dual role of collecting evidence and providing medical service").

 Consistent with the reasoned authority of the precedent referenced above, this Court holds that when a child sexual abuse or assault victim is examined by a forensic nurse trained in sexual assault examination, the nurse's testimony regarding statements made by the child during the examination is admissible at trial under the medical diagnosis or treatment exception to the hearsay rule, West Virginia Rule of Evidence 803(4), if the declarant's motive for making the statement was consistent with the purposes of promoting treatment and the content of the statement was reasonably relied upon by the nurse for treatment. In determining whether the statement was made for purposes of promoting treatment, such testimo-

ny is admissible if the evidence was gathered for a dual medical and forensic purpose, but it is inadmissible if the evidence was gathered strictly for investigative or forensic purposes.

In the case sub judice, Nurse Leahy explained during her testimony that the evaluation included a medical component. Specifically, she stated as follows:

> Well, we actually perform some of the screening. For example, in sexual abuse cases we need to obtain a certain amount of medical information to make a determination on whether the patient is at any type of risk for pregnancy or sexually transmitted illnesses or other injuries that may require further medical evaluation so we are involved in that plan with the physician.

She continued by explaining that "we obtain their health history, their surgical history, some of their sexual history from the patient and the parent."

T.F. testified that she did not know what a forensic nurse was, and with specific regard to Nurse Leahy, T.F. stated, "I just know she is a nurse." In commenting on the decision to take T.F. to Winchester, T.F.'s mother stated that she took T.F. "to Winchester Hospital to be checked."

In ruling on the Appellant's objection to the introduction of Nurse Leahy's testimony, the trial court stated as follows:

> It appears to the Court from the testimony of [the nurse] that there is a large medical component to what she does and that the conversations she had with the alleged victim of this matter were based on evidence she was gathering for purposes of medical diagnosis and treatment which even extended beyond the immediate issue to whether or not there were any diseases

that needed to be checked out and things of that nature.

> The Court does find that the information was given by this alleged victim to [the nurse] for purpose of medical diagnosis and treatment which does fall . . . within a firmly routed hearsay exception, and it has adequate indicia of reliability, therefore, the Court is going to permit this line of inquiry.

Based upon the evidence of record, this Court finds no abuse of discretion in the trial court's decision to admit the testimony of Nurse Leahy regarding her examination of T.F. and the information provided during that examination.[7]

### B. Hearsay: Appellant's Statement to Police

■ As referenced in the factual recitation above, while the Appellant was being escorted out of the family home, he told police that they should ask the victim's mother about allowing the victim to drink alcohol. When the State attempted to introduce this comment into evidence at trial through the testimony of the police officer, the Appellant objected on the basis of hearsay. The trial court permitted the introduction of such evidence over the Appellant's objection.

On appeal, the State contends that a party's own statement may be used against him, pursuant to Rule 801(d)(2)(A) of the West Virginia Rule of Evidence. That rule provides as follows: "Statements which are not hearsay: Admission by Party–Opponent. The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity. . . ."

Indeed, consistent with the argument of the State in this case, this Court has recognized that a statement is not hearsay if such

---

7. The Appellant also suggests that his right to confrontation was violated by the admission of the testimony of Nurse Leahy. In rejecting that assertion, we note that both T.F. and the nurse were available witnesses, and the Appellant availed himself of ample opportunity to question them. In syllabus point six of *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311 (2006), this Court explained as follows: "Pursuant to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Confrontation Clause

contained within the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution bars the admission of a testimonial statement by a witness *who does not appear at trial*, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." 219 W.Va. at 368, 633 S.E.2d at 313 (emphasis supplied). We find no Confrontation Clause violation in this case.

statement is offered against a party and is his own statement, in either his individual or representative capacity. *Southern v. Burgess*, 198 W.Va. 518, 482 S.E.2d 135 (1996); *State v. Delaney*, 187 W.Va. 212, 417 S.E.2d 903 (1992). In syllabus point one of *Heydinger v. Adkins*, 178 W.Va. 463, 360 S.E.2d 240 (1987), this Court explained that "[a] statement is not hearsay if the statement is offered against a party and is his [or her] own statement, in either his [or her] individual or a representative capacity. W.Va. R.Evid. 801(d)(2)(A)." The *Heydinger* Court stated as follows:

> Rule 801(d) of the *West Virginia Rules of Evidence* removes certain categories of evidence from the definition of hearsay, notwithstanding the fact that in each instance the category of evidence fits within the language of the hearsay definition found in W.Va.R.Evid. 801(c), and allows such evidence to be admitted at trial. *See* F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 8.4, at 466 (2d ed. 1986).

178 W.Va. at 468, 360 S.E.2d at 245. The *Heydinger* Court also explained that the rule is sensible from a practical standpoint.

> The theory underlying this evidentiary rule is that if a person's own statements are offered against him, he cannot be heard to complain that he was denied an opportunity for cross-examination. An additional justification supporting the admissibility of this class of evidence is the fact that it is inherently trustworthy. [citation omitted] Presumably, a party would not admit or state anything against his or her interest unless it was true; nevertheless, if the statement is inaccurate, the party may deny it altogether or explain why he/she made it.

178 W.Va. at 468, 360 S.E.2d at 245.

■ Notably, the trial court in this case also evaluated this admissibility issue under Rule 804(b)(3) of the West Virginia Rules of Evidence, as a statement against interest. Recognizing that the language of the rule designates this section as applicable only where a declarant is unavailable, we do not premise our conclusions on any application of this rule. As previously contemplated in a myriad of contexts, "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

One of the primary issues raised at trial in this matter was whether the victim was permitted and/or encouraged to consume alcoholic beverages immediately prior to one of the instances of sexual abuse. This matter was the subject of disputed testimony, the mother having testified that the child was not permitted to drink and the child testifying otherwise. Thus, we find that testimony referencing statements made by the Appellant as he exited the family home is permissible as an admission by a party opponent. We premise our conclusion upon application of Rule 801(d)(2)(A) of the West Virginia Rule of Evidence, finding that the evidence was properly admitted as the Appellant's own statement offered against him. We conclude that the lower court did not abuse its discretion in permitting the testimony at issue.

C. Additional Assignments of Error

■ The Appellant also contends that the evidence against him was insufficient to sustain the jury verdict, even when viewed in a light most favorable to the State. The Appellant argues that the trial court should have directed a verdict in favor of the Appellant. However, the trial court specifically found that the victim's own testimony would have been sufficient, even if standing alone, to justify the guilty verdict. In addition to the victim's testimony, the mother, the forensic nurse, and Deputy Link all testified regarding the incidents of abuse.

■ As this Court has previously articulated, a defendant asserting insufficiency of evidence faces a difficult task. This Court explained as follows in pertinent part of syllabus point three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995):

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An

appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt.... [A] jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Upon review by this Court, we find no merit in the Appellant's assertion that the evidence was insufficient to sustain the guilty verdict against him. Extensive and credible evidence was presented, including the testimony of the victim, her mother, the forensic nurse, and the police officer investigating the matter.

■ The Appellant also contends that the trial court erred in imposing a disproportionate sentence upon the Appellant. The trial court sentenced the Appellant to consecutive sentences of ten to twenty-five years on Count I; one to five years on Count II; ten to twenty-five years on Count III; and ninety days on Count IV. In establishing this sentence, the trial court considered arguments of counsel, defense witness testimony, the Appellant's psychological examination, and the pre-sentence report. The trial court cited the Appellant's inability to admit guilt, his petit larcenies, and his conviction for animal cruelty. According to defense counsel, the Appellant indicated that he did not "have a specific recollection of those [crimes] but admitted them."

■ The State maintains that the sentence imposed by the trial court in this matter was appropriate and within statutory limits. In syllabus point four of *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982), this Court explained that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." This Court has also clearly enunciated that it will review sentencing orders under a "deferential abuse of discretion standard." *State v. Lucas*, 201 W.Va. 271, 276, 496 S.E.2d 221, 226 (1997).

In the present case, the trial court examined all the evidence introduced at trial, observed the demeanor of the witnesses, and reviewed all records of prior criminal history. The Appellant's crimes constituted predatory abuse of his girlfriend's daughter, he refused to admit his culpability, and he was reported to be quite defensive during psychological testing. The psychological report also indicated that he attempted to minimize and deny his sexual behavior, and the trial court observed that "Dr. Kradel points out that the defendant answered test questions and responded to test stimuli in a manner highly similar to that of men who have sexually molested a child under 18 years of age who deny having committed this behavior." The trial court also observed the fact that the Appellant's family was in denial of his crimes, and the court stated that it "has no optimism or expectation, in fact, that the family would guard against his contact with young female potential victims in this matter under the age of 18." The trial court also noted that the Appellant had been on probation for his prior crimes and that "apparently probation did not act as a deterrence for the commission of other crimes...." The trial court summarized its findings as follows:

Looking at this matter and looking at all the findings that the Court has rendered thus far, the Court believes in consideration of the defendant's criminal history that he will commit another crime even if it's not a crime of this nature. However, it appears likely to this Court that the community may be at risk for him to commit another crime of this nature because he has failed to accept responsibility for this. He denied that it happened. And, therefore, as previously stated, he is not going to be able to have the benefit of any rehabilitative counseling or program.

In this matter, the community interest demands incarceration for two reasons.

Both to punish this defendant for his actions and also to prevent the commission of future crimes to protect the safety of other young women in our community.

Upon review, this Court finds that the trial court thoroughly and insightfully evaluated the sentencing component of this case. We find no error in the trial court's sentencing determinations.[8]

#### IV. Conclusion

Based upon the foregoing, this Court affirms the judgment of the Circuit Court of Morgan County.

Affirmed.

---

8. The Appellant also asserts cumulative error. We find no merit to this claim, based upon our evaluation of the Appellant's other contentions.