# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 13-0341** (Berkeley County 12-F-168)

**Ruben C.,**
**Defendant Below, Petitioner**

**FILED**

May 30, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Ruben C.,[1] by counsel Christopher J. Prezioso, appeals the April 5, 2013, Amended Sentencing Order entered following his conviction by a jury in the Circuit Court of Berkeley County of first degree sexual assault,[2] domestic battery,[3] and violation of a domestic violence protective order.[4] The State of West Virginia, by counsel Cheryl K. Saville, filed a response, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner and the victim, M.C., had been married for seventeen years. They had two children, C.C., age 16, and M.C., age 12. On or about December 14, 2011, the victim obtained an emergency domestic violence protective order against petitioner following an incident that occurred on December 7, 2011.The victim testified that, on that day, she was riding with petitioner in a car when she told him she wanted a divorce. She testified that petitioner became very upset, drove her to an unknown location, hit her in the chest three times, and destroyed her

---

[1]In keeping with the Court's policy of protecting minors and the identities of victims of sexual crimes, the victim and her children will be referred to by their initials throughout this memorandum decision, and petitioner, by his first name and last initial.

[2]*See* W.Va. Code § 61-8B-3 (2006)

[3]*See* W.Va. Code § 61-2-28(a) (2011).

[4]*See* W.Va. Code 48-27-903 (2011).

1

glasses.[5] Petitioner moved out of the home after this incident but returned several times. Each time, either the victim or the children told him to leave. On one of the occasions when petitioner came to the home, C.C. told him he was not permitted to be there and showed him a copy of the protective order, at which time petitioner read through the document.

On the afternoon of January 30, 2012, petitioner was waiting for the victim when she returned home. When she entered the home, petitioner took the bags of food she was carrying and threw them on the floor. Petitioner proceeded to hit her in the face and pushed her onto a sofa while telling her that he was tired of her and that she was humiliating him. He then forced her into the bedroom and onto the bed where he drew a knife and cord and told her numerous times that if she did not reconcile with him, he would kill her. Ultimately, the victim promised petitioner that they would reconcile. Petitioner then forcibly removed the victim's clothes and had vaginal intercourse with her while the knife and cord were on the bedside table. When he was finished, he told her to get cleaned up because the children would soon be home from school. The victim testified that she let her hair down so that the children could not see that she had been beaten up and that she had been crying. Petitioner followed her into the kitchen and asked her to have the restraining order removed. The victim did not respond to his request.

The children returned from school at approximately 3:00 pm. When C.C. arrived, he was surprised to see petitioner at the home because he had previously moved out. C.C. also noticed that the victim had been crying and asked petitioner what he did to her; petitioner replied that they had only been talking. Both the victim and C.C. testified that while petitioner was watching television with M.C. in the living room, the victim slipped into C.C.'s bedroom and asked him to quietly call the police. The police arrived at the home approximately ten minutes later and arrested petitioner. The victim gave a statement to police, which was both translated into English and written on her behalf by C.C. The victim found the knife and cord previously hidden by petitioner and gave them to police. The family's landlord testified that he had given the knife to petitioner and that petitioner had used it to butcher animals outside the family's home.

Following a jury trial, petitioner was convicted of one count each of sexual assault in the first degree, domestic battery, and violation of a domestic violence protective order. His post-trial renewed motion for judgment of acquittal and motion for a new trial were denied. By order entered February 20, 2013, petitioner was sentenced to not less than fifteen nor more than thirty-five years of incarceration for the first degree sexual assault conviction; twelve months and a $250.00 fine for the domestic battery conviction; and time served from the end of the sentence for his domestic battery conviction to February 20, 2013, plus a $500.00 fine, for the violation of a domestic violence protective order conviction. An Amended Sentencing Order was entered April 5, 2013. This appeal followed.

In his first assignment of error, petitioner argues that the trial court committed error in denying his motions for judgment of acquittal based upon insufficiency of the evidence. In syllabus points one and three of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court established the following standards for reviewing claims of insufficiency of the evidence:

---

[5]The victim's first language is Spanish. She testified through a translator.

2

1. The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

. . . .

3. A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Furthermore, we observed that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact. . . . It is for the jury to decide which witnesses to believe or disbelieve." *Id.* at 669 n.9, 461 S.E.2d at 175 n.9. *See State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996) (stating that when reviewing sufficiency of evidence, "the viewer must accept all reasonable inferences from it that are consistent with the verdict. . . .[and] as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.").

With regard to his convictions of first degree sexual assault and domestic battery, petitioner argues that there was no scientific or physical evidence[6] corroborating the victim's account; that the only evidence that these alleged crimes occurred was the false testimony of the victim; and that law enforcement failed to adequately investigate the matter. Petitioner further argues that the sequence of events about which the victim testified could not have feasibly transpired during the thirty-minute time frame she described; that the recording of C.C.'s 9-1-1

_____

[6]Petitioner contends that the photographic evidence of the victim's injuries to her upper torso failed to show any injury and did not establish domestic violence. He argues that, at best, the photographs show that the injuries were self-inflicted. We note that both C.C. and one of the investigating officers testified that they observed bruising and red marks on the victim's face and neck after the incident and that the officer also testified that he observed that the inside of the victim's lip was bloodied. The officer's photographs of these injuries were shown to the jury. Petitioner does not address the fact that evidence of injuries to the victim's face and neck was considered by the jury.

3

call to police clearly demonstrated that neither the victim nor her children were in any immediate danger; that petitioner was cooperative with police when they arrived; and that the victim wrote letters to petitioner while he was in jail in which she wished him well, discussed making arrangements for the children to see him, and discussed issues relating to their property. It is petitioner's contention that, given the foregoing, the evidence was not sufficient to convict him of first degree sexual assault and domestic battery. We disagree.

Upon viewing all of the evidence in the light most favorable to the prosecution, and also crediting all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, as we are required to do, we conclude that a rational trier of fact could have found that petitioner committed first degree sexual assault and domestic battery beyond a reasonable doubt. *See Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, syl. pt. 3. The jury clearly found the testimony of the State's witnesses to be credible. The victim's testimony established that petitioner was waiting for her when she arrived home from shopping, that he shoved and struck her several times, forced her into the bedroom and down onto the bed, brandished a knife and cord, threatened to kill her, and told her that if they did not reconcile, she would die. Petitioner then forcibly removed the victim's clothing and sexually assaulted her. The couple's son testified that when he returned home from school, he observed that his mother had been crying and further observed bruising and red marks on her face and neck. The investigating officer similarly testified that the inside of the victim's lip was bloodied. Photographs of the victim's injuries were displayed to the jury. Given the foregoing, we conclude that the evidence was sufficient to convict petitioner of first degree sexual assault and domestic battery.

With regard to his conviction of violation of a domestic violence protective order, petitioner similarly argues that the evidence was insufficient to convict him of this offense. West Virginia Code § 48-27-903(a)(1) provides that a person is guilty of the misdemeanor offense of violation of a protective order if he or she "knowingly and willfully violates[,]" inter alia, certain enumerated provisions of "an emergency or final protective order. . . ."[7] An emergency domestic violence protective order had been filed against petitioner on December 14, 2011. A final hearing

---

[7]West Virginia Code § 48-27-903(a) provides as follows:

(a) A person is guilty of a misdemeanor if the person knowingly and willfully violates:
  (1) A provision of an emergency or final protective order entered pursuant to:
        (A) Subsection (a) or (b) of section five hundred two [§ 48-27-502] of this article;
        (B) If the court has ordered such relief; subsection (2), (7), (9), or (14) of section five hundred three [§ 48-27-503] of this article;
        (C) Subsection (b) or (c) of section five hundred nine [§ 48-5-509], article five of this chapter; or (D) subsection (b) or (c) of section six hundred eight [§ 48-5-608], article five of this chapter;
  (2) A condition of bail, probation or parole which has the express intent or effect of protecting the personal safety of a particular person or persons; or
  (3) A restraining order entered pursuant to section nine-a [§ 61-2-9a], article two, chapter sixty-one   of this code.

on the matter was scheduled for December 20, 2011. Because the petitioner was not personally served prior to December 20th, the hearing was continued to January 9, 2012. Personal service of the protective order was attempted but never achieved prior to the January 9th hearing. As a result, petitioner was served by means of a Class I legal advertisement published on January 2, 2012, in the Martinsburg Journal newspaper, which is circulated throughout Berkeley County, pursuant to West Virginia Code § 48-27-311 (2001).[8] Petitioner failed to appear at the January 9, 2012 final hearing, at which time a final protective order was issued. Petitioner maintains that he visited the family home at least three times after the protective order was entered and that the victim never contacted the police to report a violation until the January 30, 2012, incident at issue. Petitioner argues that the evidence does not show that he "knowingly and willfully" violated the domestic violence protective order entered at the January 9, 2012 hearing given that he was not personally served with either the petition or the emergency order and, therefore, did not attend the final hearing.

Based upon our review of the record before us, we conclude that the evidence was more than sufficient to convict petitioner of knowingly and willfully violating the domestic violence protective order. It is undisputed that service was properly obtained by publication of a Class I legal advertisement in the local newspaper. Furthermore, the couple's son, C.C., testified that, after the protective order was in place but prior to the incident at issue, petitioner came to the home, C.C. told him to leave because a protective order was in place. C.C. further testified that he showed petitioner the protective order and that petitioner read through it. Moreover, the victim testified that after petitioner assaulted her, he begged her to have the protective order removed so that he could return home. Having viewed this evidence in the light most favorable to the prosecution, and having credited all inferences and credibility assessments that the jury might have drawn in favor of the prosecution, we conclude that a rational trier of fact could have found that petitioner knowingly and willfully violated the domestic violence protective order. *See Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, syl. pt. 3.[9]

Petitioner's next assignment of error is that the circuit court committed error by failing to grant petitioner's motion for new trial. Our standard of reviewing the circuit court's order is as follows:

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit

---

[8]According to the parties, personal service was achieved on April 20, 2012.

[9]In a separate assignment of error, petitioner very briefly argues that his convictions should be reversed because the victim's false and uncorroborated testimony had a material effect on the jury verdict given that there was no physical, scientific or other testimonial evidence of the crimes. As discussed above, the jury clearly weighed the evidence and determined that the victim's testimony was credible. Furthermore, notwithstanding his allegations that the victim committed welfare fraud, petitioner has failed to show that the victim's testimony relating to the crimes herein was false.

court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pt. 2, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011).

Petitioner argues that the circuit court should have permitted extrinsic evidence that the victim fraudulently used the identity of "Patricia Ortega" to defraud her employer and the State. More specifically, petitioner sought to introduce employment records to show that the victim used a false identity to obtain work with her employer while also receiving the maximum amount of welfare benefits for being unemployed. Petitioner argues that the purpose of introducing this evidence was not only to attack the victim's credibility, but also to show her motive in making false allegations against him—that by sending petitioner to prison, the victim would be able to further hide her acts of fraud.

The circuit court disallowed the documentary evidence, but permitted cross examination of the victim on the issue, pursuant to Rule 608(b) of the West Virginia Rules of Evidence, which provides:

> (b) Specific Instances of Conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of a witness other than the accused (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>   The giving of testimony under this rule by a witness does not operate as a waiver of the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

When asked about the allegations of fraud, the victim repeatedly invoked her right to remain silent under the Fifth Amendment to the United States Constitution. Petitioner argues that he was unfairly precluded from showing the jury that the victim had used a false identity to obtain employment and was defrauding the State of welfare benefits. He further argues that, given that his entire case rested on the victim's truthfulness and untruthfulness, the fact that the victim testified through an interpreter made it difficult for the jury to determine her propensity for untruthfulness. He thus contends that he should have been permitted to present extrinsic evidence of the victim's fraudulent conduct. We disagree.

It is undisputed that the victim has not been charged with or convicted of welfare fraud. Pursuant to Rule 608(b), specific instances of any such alleged fraud on the part of the victim, for the purpose of attacking her credibility, may not be proved by extrinsic evidence. The rule permits, however, cross examination of the victim concerning her character for truthfulness or untruthfulness. Accordingly, the circuit court properly permitted defense counsel to cross

examine her on the fraud allegations. Petitioner's contention that he should have been allowed to introduce extrinsic evidence of such fraud given the victim's assertion of her Fifth Amendment right to remain silent in response to this line of questioning is not supported by the plain language of the rule, nor does petitioner offer support from any other legal authority. Similarly, petitioner's argument that he sought to introduce extrinsic evidence of alleged fraud to also show that the victim fabricated the sexual assault charges in order to silence the petitioner from revealing her fraudulent conduct is not supported by case law or any logical argument. The circuit court's reasoned decision to allow cross examination of the victim and preclude extrinsic evidence was soundly based on Rule 608.[10]

Petitioner further argues that his motion for a new trial should have been granted on the ground that the circuit court should have given a jury instruction providing that an adverse inference could be drawn from the victim's assertion of her Fifth Amendment right to remain silent. In support of his argument, petitioner contends that, in civil actions, the pleading of the Fifth Amendment by a party would cause an adverse inference when the party "refuse[s] to testify in response to probative evidence offered against them." *In re Aaron Thomas M.*, 212 W.Va. 604, 611, 575 S.E.2d 214, 221 (2002) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)). Petitioner argues that, similarly, an adverse inference should have been permitted in his criminal trial. Given that there is no precedent for such an instruction in the criminal context, we conclude that the circuit court did not abuse its discretion by permitting the jury to draw its own conclusions regarding the victim's credibility and by refusing to give an adverse inference jury instruction as it related to her testimony.

Petitioner's final argument is that his conviction should be reversed because the circuit court permitted certain Rule 404(b) evidence of prior bad acts to be admitted at trial without conducting an in camera hearing pursuant to *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516

---

[10]Petitioner also argues that, prior to trial, he should have been permitted to review subpoenaed welfare benefit records for the victim and "Patricia Ortega" from the West Virginia Department of Health and Human Resources ("DHHR"). The records were ordered placed under seal and, upon reviewing them in camera, the circuit court concluded that the petitioner could not use them under Rule 608(b) because, as previously noted, that rule "prohibits the use of extrinsic evidence to prove a specific instance of conduct that could attack a witness's credibility." Petitioner argues that, at the very least, he should have been permitted to review the subpoenaed records, which would have given him information to more thoroughly prepare for cross-examination of the victim and which may have provided him with information that would have been useful to his case. Petitioner's argument is without merit. The record reveals that petitioner made full inquiry of the victim regarding her receipt of welfare benefits and her alleged use of the alias "Patricia Ortega" for purposes of employment. The victim repeatedly asserted her Fifth Amendment privilege against self-incrimination in response thereto. There is no basis in the record to believe that access to the DHHR records adversely affected petitioner's cross-examination of the victim given the court's evidentiary rulings and the victim's predictable response to this line of questioning. Further, and more importantly, there is certainly no evidence that the subpoenaed records were in any way relevant to the crimes for which petitioner was tried and convicted. The circuit court did not abuse its discretion in refusing to allow the petitioner to review the DHHR records.

7

(1994).[11] Our review of the circuit court's ruling in this regard is governed by the following standard:

> "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syllabus Pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds by State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994).

Syl. Pt. 1, *State v. Payne*, 225 W.Va. 602, 694 S.E.2d 935 (2010). *See Id.* at 604, 694 S.E.2d at 937, syl. pt. 2 ("'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).").

Petitioner argues that, prior to trial, the State informed petitioner that it intended to present evidence of the December 7, 2011, domestic battery, which was the underlying act for the domestic violence protective order. Petitioner argued, as he does on appeal, that the circuit court should have conducted a *McGinnis* hearing to determine whether the evidence should have been admitted. However, the circuit court determined that the evidence was intrinsic and necessary to complete the story of the crimes for which petitioner was being tried. *See LaRock,* 196 W.Va. at 312 n.29, 470 S.E.2d at 631 n.29 (""'Other act' evidence is "intrinsic" when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or

---

[11]In *McGinnis*, we held has follows:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 2.

both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged.'") (quoting *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (internal citations omitted)). Thus, as this Court has held in past cases, evidence that is intrinsic to the indicted charge is not governed by Rule 404(b). *See State v. Harris*, 230 W.Va. 717, 722, 742 S.E.2d 133, 138 (2013) (citing cases).

Clearly, evidence of the domestic battery occurring on December 7, 2011, which was the underlying act for which the victim sought and was awarded a domestic violence protective order, was inextricably intertwined with the crime for which petitioner was charged (violation of the protective order). Without the evidence of the underlying domestic battery, it would not have been possible to appropriately present to the jury the complete story of the crime charged. We, therefore, conclude that the circuit court did not abuse its discretion in admitting this evidence at trial.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 30, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

9